Gary N. PETRI, Petitioner-Appellant,

v.

Michelle T. PETRI, Respondent,

v.

Mr. & Mrs. Neal PETRI and Sandra Petri, Intervenors-Appellants.

No. 47698.

Missouri Court of Appeals,
Eastern District,
Division One.

March 26, 1985.

William R. Gartenberg, Clayton, for appellants.

Irvin R. Zwibelman, Clayton, for respondent.

KAROHL, Judge.

Husband and his parents, as intervenors, appeal dissolution decree claiming error in the custody award of three children to wife. Husband appeals child support of $35.00 per week per child; award of 1977 AMC Matador automobile to wife; and, an order that husband repay wife $7,000 to replace a like amount in government bearer bonds which the trial court found he took from wife several months after the parties separated. The bearer bonds were the last of a $25,000 trust fund of wife which was her separate property.

■ The claim of error on the property and money awards borders on the thin edge of frivolous appeal. Hence they are easily resolved. The automobile was purchased in joint names and is marital. However, it was purchased with part of wife's separate trust fund. The award was well within the trial court's discretion although it was the only operating automobile owned by either party at the time of the dissolution.

■ The child support of $35.00 per week per child was not an abuse of discretion in view of husband's net earnings of

$1,200 per month. The amount is not excessive and by his own testimony he was spending substantially the same amount for the support of his children during the separation of the parties.

■ The order that husband repay wife $7,000 which the court found husband took from wife was supported by her testimony that he took her bearer bonds in that amount. Although he denied taking or knowing the disposition of her bonds it was for the court to determine credibility of witnesses. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 495 (Mo. banc 1980). Her version was supported by her testimony that husband took the bonds, the children's birth certificates and the parties' marriage license at the same time and from a single container. Husband later returned the marriage license. The trial court expressly found wife's testimony on this issue more credible than husband's.

The trial court awarded primary custody of the three children, ages twelve, nine and five, to wife. Husband did not request custody for himself. He was not living with his parents at the time of the dissolution hearing but with another woman by whom he had a four-month old child. He wanted the children awarded to his parents. Two months after the parties separated husband pre-planned to have temporary custody of the children on a Sunday and without the knowledge of wife to secure from her home the children's clothing and toys. This was done after husband arranged his dissolution petition. He led wife to believe the children would be returned but admitted he never intended to keep that commitment. He testified he was following instructions of counsel.[1] He had already signed a petition for dissolution which alleged he had custody of the children although they were, at the time of signature, in wife's custody. The children were thereby "seized" on a Sunday and husband's petition for dissolution was filed the next day. Wife thereby lost custody pending an order of the trial court. § 452.310.3 RSMo 1978. Intervenor paternal grandfather thereafter allowed wife to see her children in an automobile parked in front of his home, one child at a time.

The evidence does not disclose much about the intervenor grandparents. Both are employed. They have a daughter, age twenty-five, who may soon be moving from the home. Their ages are not made part of the record.

Neither husband nor intervenors alleged in their pleadings that wife was an unfit mother. There is no substantial evidence of unfitness of wife as a mother. The only contention of "unfitness" of wife offered by husband or intervenors was that between separation of the parties in August 1980 and "seizure" in October 1980 wife did not attend to all the children's needs and during temporary custody after "seizure" the children were returned dirty and sickly. Wife denied these charges. Although appellants also mentioned the fact that during the separation of the parties wife had a fourth child there was no evidence connecting this event with the children of the marriage. Appellants also refer to wife's testimony about her bearer bonds as being conflicting and perjury. We find no such conflicting testimony.

The intervenor-grandmother's testimony was brief and insubstantial. Intervenor-grandfather described his fine home and how well the children had functioned in his home. There was very little activity on his part with the children. For example he had never talked with the children's school teachers. He did not deny but could not recall wife's request for the return of her children. He assisted in taking the children "until we get this straightened out."

■ The thrust of husband's and intervenors' requests for custody was premised on how well the children were doing with the grandparents and not upon the unfitness of wife as mother. They argue that "... when the court finds that each parent is unfit or unable, and that it is in the best interest of the child...." The award of custody should be to a third party. § 452.-

---

1. We would prefer to believe this was a misunderstanding.

375.3 RSMo Supp.1984. No such finding was compelled by the evidence. Further, the "scheme of seizure" is not a worthy foundation upon which to deny a proper mother the custody of her children or the children of the qualities and benefits of a mother. "Where the courts are faced with a choice between the natural parent and a third person, they have usually been unwilling to disregard the traditional belief that it is in the best interests of a young child to be placed in the custody of a natural parent, unless that natural parent is wholly unsuitable." *In re Marriage of Wofford*, 589 S.W.2d 323, 326 (Mo.App.1979). There was affirmative evidence of wife's love and affection for her children and her ability to care for them. During the original two months of separation she held three jobs while husband provided a total of $60.00 for the support of the children. She acquired a three bedroom home for her family just before the dissolution hearing. In addition to evidentiary support there is a strong presumption in favor of custody by the natural parent where not overcome by the evidence. *Ex parte Archer*, 253 S.W. 1095, 1096 (Mo.App.1923). The position of the trial court to consider all the evidence and factors is superior to that of an appellate court. On these facts its order should not be disturbed. *Chastain v. Chastain*, 632 S.W.2d 291, 292–293 (Mo.App.1982).

We affirm.

PUDLOWSKI, P.J., and GAERTNER, J., concur.